GREAT SOUTHERN LIFE INS. CO. v.
DOLAN. (No. 1264.) *

(Court of Civil Appeals of Texas. El Paso.
Jan. 19, 1922. Rehearing Denied
March 30, 1922.)

1. Insurance ⟷130(6)—Acceptance of application without issuance of policy completes contract.

Though the mere application for insurance is not a contract, but merely a proposition for a contract, the acceptance thereof by the company makes the contract complete without the issuance of the policy, unless the application provides otherwise.

2. Insurance ⟷131(1)—Contract may be by parol.

A contract of insurance may be by parol, in the absence of statutory requirement or other positive regulation to the contrary.

3. Insurance ⟷130(4)—Collection and retention of premium without notice of rejection justifies assumption application was accepted.

When an applicant for insurance had paid the premium to the agent of the company authorized to receive it, and the company received its portion of the premium before acting on the application, and had assumed the duty of returning the premium on a rejection of the application, and the applicant had done everything required of him, and had received no notice of adverse action on his application or cause for it, he could assume after several months that the company had accepted his application.

4. Insurance ⟷95 — Company charged with knowledge premium had not been returned by agent.

An insurance company is charged with knowledge that its agent, who was authorized to collect the first premium on applications taken by him, had not returned to the applicant the premium paid him on an application which the company subsequently rejected.

5. Insurance ⟷668(3)—Facts held to take to the jury issue of company's knowledge that applicant believed his application was accepted.

Knowledge by an insurance company that no formal notice of rejection had been sent to an applicant for insurance, and that the premium paid had not been returned to him, held sufficient to take to the jury the issue of the company's knowledge that insured believed his application had been accepted.

6. Estoppel ⟷95—Created by silence of party owing a duty to speak.

Silence has the effect to estop a party where under the circumstances it is his duty to speak, and where that silence misled the other party to his injury.

7. Insurance ⟷668(15)—Facts held to take to the jury the issue of estoppel to deny acceptance of application.

Proof that an application for insurance has been received by the company with a medical examiner's report approving the risk, that the first premium had been paid to the company's agent and returned by him, and that no notice of rejection of the application had been sent to insured held sufficient to take to the jury the issue whether the insurance company was estopped after the death of the insured to deny that it had accepted the application.

8. Action ⟷50(9)—Not misjoinder to sue company and agent on contract not represented by policy.

Where an application for life insurance had been made and premium paid to the soliciting agent, and no notice of rejection of the application had been sent to insured, there was no misjoinder of parties or causes of action in suing the insurance company and its agent, both of whom had received their portions of the premium, to establish liability on the ground of estoppel to deny the acceptance of the application.

9. Action ⟷45(1)—Rule against misjoinder should be construed against that of multiplicity of suits.

The rule forbidding misjoinder of actions is one of convenience, and should be construed with the broader rule for the avoidance of multiplicity of suits.

10. Insurance ⟷602—Statutory penalty applies, though no written policy issued.

The statutory penalty for refusal to pay the amount of insurance applies to refusal to pay a valid claim for such insurance, although no written policy had been issued and delivered.

11. Insurance ⟷129—Agent held authorized to promise return of premium after application was not accepted.

A soliciting agent of a life insurance company, who was expressly authorized to receive payment of the first premium and retain his commission therefrom before remitting to company, had implied authority, in collecting the premium before the application was acted upon by the company, to promise that the premium would be returned if the application was rejected.

12. Insurance ⟷629(1)—Pleadings held to allege estoppel to deny acceptance of application.

Pleadings in an action on a contract for life insurance for which no policy was ever issued, alleging payment of the premium and retention thereof by the company without notice of rejection of the application, held to state acts and omissions relied upon as constituting equitable estoppel to deny acceptance of the application.

13. Trial ⟷352(1)—Requiring answers to special interrogatory only if previous one was answered affirmatively is proper form.

It was not erroneous in form to submit to the jury a second special issue, with directions to answer it only if they answered the first

issue submitted in the affirmative, where there would have been no necessity for an answer to the second issue if the first had been answered in the negative.

**14. Trial &cong;234(1)—Charge held to exclude portion of conversation as to the defendant against whom it was not admissible.**

In an action against a life insurance company and its agent on a contract of insurance for which no policy was ever issued, where evidence of a conversation between applicant and the agent was admitted, all of which was competent against the agent, but some of which related to matters outside the scope of his authority, a charge that any statement by the agent differing from the written application and not in compliance with the agent's contract, was not evidence against the insurance company was sufficient to exclude the objectionable portion of the conversation as to the company.

**15. Appeal and error &cong;1050(1)—Testimony agent was writing life insurance at different times for different companies held not prejudicial.**

In an action against a life insurance company and its agent testimony that the agent was writing life insurance for another company and later for the defendant company, if immaterial, was not prejudicial to defendant, which had taken over the assets and assumed the liabilities of the other company and continued the agent as its agent.

**16. Appeal and error &cong;1050(1)—Evidence of telegram by insurance company guaranteeing agent's drafts held not prejudicial.**

In an action against a life insurance company involving estoppel to deny acceptance of an application, defendant was not prejudiced by evidence of telegrams from its vice president to a bank, guaranteeing against loss on account of drafts by the agent who had received and retained applicant's first premium.

**17. Insurance &cong;664—Testimony of medical examiners held admissible against company on issue of estoppel.**

In an action on a life insurance contract involving the issue of estoppel of the company to deny acceptance of the application of the insured, testimony by company's medical examiners that they had unqualifiedly recommended the risk, which merely confirmed the report they made to the company, was admissible as tending to show that the applicant was led to believe his application had been accepted.

Appeal from District Court, El Paso County; W. D. Howe, Judge.

Action by Lura Lee Dolan against the Great Southern Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Jno. L. Dyer, Gowan Jones, and C. W. Croom, all of El Paso, for appellant.

Brown & Whitaker and Lea, McGrady, Thomason & Edwards, all of El Paso, for appellee.

WALTHALL, J. Appellee, Lura Lee Dolan, individually and as survivor of the community estate of herself and her deceased husband, Hays Pat Dolan, brought this suit against Great Southern Life Insurance Company and Lee Glasscock to recover $15,000 insurance on the life of her deceased husband, Hays Pat Dolan, together with statutory penalty and attorney fees.

The pleadings on the part of appellee, summarized, present, substantially, the following facts:

On March 27, 1918, appellant insurance company, acting through its agent, Lee Glasscock, made a contract with H. P. Dolan for a valuable consideration, the substance of which was that the company from said date insured the life of said Dolan, and promised to pay her, as beneficiary in said contract, the sum of $15,000, upon proof to it of the death of said Dolan, on condition that he, said Dolan, should comply with his part of the contract, which was that said Dolan would pay the company or its agent annual premiums each in the sum of $390.45, or approximately that amount, during the life of said Dolan, and while said contract was in force, and that said Dolan did, at the time of making said contract, pay the company through Lee Glasscock said sum of $390.45 as the first annual premium, and did answer in writing all questions propounded to him upon the printed forms furnished by the company for that purpose, and submitted to the usual medical examination before a physician or medical examiner as demanded by the company; that it was agreed between Dolan and the company, acting through Lee Glasscock, that said contract of insurance should become binding on the company and in full force and effect from the said payment of the premium, and that the company in due course of time would issue to Dolan a more formal life insurance policy in the sum as above, with her as beneficiary, but that through some fault or neglect on the part of the company, its agents and employés, the company never issued such policy, or, if they did, same was not received by said Dolan; that the only other requirement on the part of the company was the annual payment of the premium; that the said contract was in part verbal, the full details of which she does not know, but the company, its agents and employés do know and refuse to acquaint her with same; that Dolan signed and delivered to the company, through Glasscock, a written application, setting out some additional details of said contract, which application is now in the possession of the company, and was accepted by it, and was never returned to said Dolan or any further notice given to him with reference to it, and that after such application was made by Dolan the company, for value,

waived all requirements therein imposed upon Dolan other than such of its stipulations as Dolan complied with.

It was further alleged that, if it should appear that Glasscock did not have authority from the company to make such a contract with Dolan as stated, the company held him out as having such authority, and he had apparent authority so to do, and said Dolan was not advised of any limitation upon the authority of Glasscock; that after Glasscock made said contract with Dolan the company was informed of same, ratified it, accepted said application, received and appropriated said first premium, and failed to give to Dolan any notice of the company's action on said application, and failed to require of Dolan any further or additional information, and led Dolan and appellee to believe that the company had insured Dolan's life for $15,000, and thereby prevented Dolan from securing life insurance in some other company, which he would have done, and allowed Dolan to die believing that his life was so insured, and that by reason of said acts and conduct of the company it is estopped to deny such contract, and that Glasscock had authority to make same. The petition alleges the death of Hays Pat Dolan on December 1, 1918, the making of the proofs of his death, denial by the company of liability; demand of payment and refusal to pay; that the company still retains and appropriates said first premium of $390.45, its refusal to pay same, the company's liability for said first premium in the event it is not liable for the amount of the insurance. The court having adjudged that appellee take nothing as against Lee Glasscock, and appellee having taken no exception or presented a cross-assignment of error as to him, we need not state appellee's pleadings as to Glasscock.

The insurance company, in substance, pleaded misjoinder of parties defendant and causes of action; general demurrer, and special exceptions; general denial; pleaded the application of Hays Pat Dolan referred to by appellee in her petition for life insurance and the terms of said application; alleged that Lee Glasscock was only the soliciting agent of the company, and had no authority, either verbally or in writing, to bind the company; alleged that said application for insurance was received, disapproved, rejected, and not accepted, but declined, and that no policy of insurance was issued on the application or by reason thereof; alleged that it is true that Glasscock did receive from Dolan the sum of $390.45, and tenders into court for the use and benefit of appellee said sum and interest; alleges that Glasscock has kept and retained said $390.45, and that it is entitled to recover from him said sum and interest, for which it prays judgment.

Lee Glasscock filed answer, but as he has not appealed from the judgment we need not state his pleading.

By her first supplemental petition appellee pleaded general denial of the affirmative matters contained in appellant's pleading as above, alleged that appellant had full knowledge of the facts, and waived all of the provisions pleaded by it as contained in the application made by Hays Pat Dolan, and after receipt of said application and with full knowledge of the contract made by its agent, Lee Glasscock, appellant ratified and approved said contract made by said Glasscock on its behalf, accepted the benefits thereunder, accepted the offer made by Dolan in said application, and that if Glasscock had no authority to bind the company he had apparent authority to do so, and that appellant held him out as having full authority; that Dolan relied on such apparent authority in dealing with Glasscock as appellant's agent; alleged that appellant received Dolan's application and never rejected same, failed to give Dolan notice of the company's action on said application, failed to require of Dolan any further or additional information, and led Dolan to believe that the company had insured his life for $15,000, and to retain such belief continuously for a period of about nine months and until his death, in December, 1918, and that by reason of said acts and conduct appellant is estopped to deny that it made the alleged contract with Dolan through Glasscock, and to deny that Glasscock had authority to make such contract, and to deny that Glasscock had authority to waive any or all of the provisions in the application pleaded by appellant.

Appellant by its first supplemental petition answered by general demurrer, special exceptions pointing out the matters excepted to, and general denial. Appellee by her first trial amendment pleaded a waiver by appellant of the provisions pleaded by it in the application made by Dolan, in that it had notice that Glasscock had agreed with Dolan that his contract with Dolan should be in force from the date of the application, and repleaded other matters not necessary to state. Appellant by its first trial amendment pleaded general demurrer, special exception, and general denial.

## Findings of Fact.

In view of the many issues, both of fact and law, presented in this appeal, we have concluded to make findings of fact, including those presented to and found by the jury, and to dispose of the case upon what we think are the material and controlling issues of fact and law.

Without reproducing the evidence at length the record discloses, substantially, the following:

A short time prior to the solicitation for insurance giving rise to this suit, Hays Pat

Dolan had taken out a policy of insurance for $10,000 with the Wichita Southern Life Insurance Company through Lee Glasscock, its agent; that this company and the policy were taken over by appellant shortly but prior to the solicitation of Hays Pat Dolan for insurance involved in this suit. Lee Glasscock was the agent of appellant in soliciting life insurance, and solicited Hays Pat Dolan to make application to 'appellant for $15,000 life insurance. In soliciting Dolan for insurance for appellant, Glasscock mentioned to Dolan the health certificate and examination in the Wichita Southern Life Insurance Company, and expressed himself to Dolan as being satisfied that his health certificate would be all right.

On March 12, 1918, the president of appellant company addressed a letter to Dolan, assuring him that appellant had reinsured and taken over all insurance policies of the Wichita Southern in force on that date, and inclosing to Dolan a certificate by which appellant by letter and certificate formally assured Dolan's policy in the Wichita Southern, and guaranteed it according to its terms, and assured Dolan that appellant was glad to have him as a policy holder. On the 27th of March, 1918, on the solicitation of Lee Glasscock, Dolan made application to appellant for life insurance in the sum of $15,000. The application was made in connection with statements and answers referred to in the application. The application is as follows:

"Application.

"I hereby apply to Great Southern Life Insurance Company, Houston, Texas, for a policy on my life, on the conditions set forth herein. [Then follow questions and answers.] I represent that all of the foregoing and following statements and answers are true, full and complete as contained in this application, whether written by my own hand or not, and are offered to Great Southern Life Insurance Company as a consideration, for and as a basis of the contract with said company under any policy that may be issued upon this application. That no statements, promises, or information made or given by or to the person soliciting or taking this application other than those written and contained herein shall have any binding force or in any way affect the rights of the company. That this application and the policy which may be issued hereon is to be construed under and by virtue of the laws of the state of Texas. Dated at Sierra Blanca, Texas, this 27th day of Mch., 1918. Any special requests? [Signed] Hays Pat Dolan, Applicant's Signature. Lee Glasscock, Soliciting Agent."

The first premium on the $15,000 insurance applied for, $390.45, was paid by Hays Pat Dolan to Lee Glasscock on March 30, 1918. At some time during the solicitation for the above insurance Glasscock said to Dolan that "he would be insured from the time he paid the money [premium] from the date of the application;" that he was insured from the date of that payment of the first premium until the company either accepted or rejected the application; "that he would have to be examined, and that the application, together with the medical report, would be sent in to the company, and if the company accepted the application he would be insured for a year from the date of the application." He further said to Dolan that if the company turned down his application the premium would be returned. About the 17th of April, 1918, Dolan was physically examined by Dr. Fuller and Dr. Church, selected by the company as its medical examiners, and Dolan's answers to the questions and to the medical examinings were taken down, and the result of the examinations sent to the medical director of the company. Each of the medical examiners unqualifiedly recommended Dolan as an insurable risk. A few days after April 24, 1918, Dr. Church, at the request of the company, sent in another specimen of Dolan's urine. It was sent in the manner suggested by the company. The company's medical director, whose duty it was to pass on applications for insurance on final disposition, testified that the second specimen never reached the company. On May 29th, 1918, the application of Hays Pat Dolan was "marked off." No policy of insurance was issued on the application. It usually takes less than 10 days for the company to act on an application for insurance after receiving all desired information. The medical director of the company gave no notice to Dolan of his action in "marking off" the application. The explanation given by the medical director for the delay in acting upon the application is the failure to receive the second specimen of urine.

At the time the first premium was paid by Dolan Glasscock sent to the company its portion of it. Neither Glasscock nor the company ever notified Dolan that the company had not accepted his application for insurance, nor did either Glasscock or the company ever return to Dolan or appellee any portion of the premium paid. The written agreement between the company and Glasscock in force at the time of the matters involved here is quite lengthy, but on the matters pertinent to the issues presented are, substantially: The company appoints Glasscock one of its agents, subject to the limitations made in the agreement, for the purpose of canvassing for and soliciting applications for insurance on the lives of individuals, and of forwarding the same to the company for action, and for collecting at the time of taking application for insurance, or on delivery of policies of insurance, the premium due for the first year, and for no other purpose whatsoever. The agent was "not authorized to make, alter or discharge contracts" for the company, "nor to waive forfeitures, grant permits, name an extra

rate for special risks or bind the first party (company) in any way," and the powers of the agent are only such as are expressly conferred in the agreement. All applications for insurance secured by the agent shall be tendered to the company whether reported on favorably by the medical examiner or not. The agreement then provides for commissions of the agent. The agent is not to use any money collected on any premiums until after the policy has been delivered to the applicant, and that he will return the money paid in all cases where applications are declined or for any reason policies are not delivered. The agent may deduct his commission due at the time of payment of first year premium, remitting remainder, to the company. The company pays all medical examination fees. The agent agrees to observe and be bounded by the rules and regulations of the company. A portion of the company's book of instructions to representatives was in evidence. It reads:

"11. *Authority of Representatives.* (1) To procure from men and women of good character and health and forward to the company applications for life insurance. (2) To collect and forward promptly to the company the first premium in accordance with the terms of their contracts. Among those things which agents are not authorized to do are the following: (1) To make, alter or annul any policy or other contract. (2) To waive forfeitures. (3) To name extra rates. (4) To collect renewal premiums. (5) To appoint medical examiners, or to promise such appointments."

Dolan died on December 1, 1918, of pneumonia developed from influenza. Appellee, Mrs. Lura Lee Dolan, was made the beneficiary in the application for insurance. After Hays Pat Dolan's death she made formal demand on the company for payment of the $15,000 insurance. The company refused payment.

The case seems to have been pleaded and the evidence submitted upon two theories: First, an acceptance as a fact, by the company of the application for insurance; second, that by reason of the acts and conduct of the company, and those of its agent, Lee Glasscock, made and done by him within the scope of his authority under his contract with the company, the company is estopped to deny an acceptance by it of the application for insurance.

The case was tried with a jury upon special issues. Upon the jury's findings the court rendered judgment in favor of appellee and against the appellant company for the sum of $21,137.50 with interest from the date of the judgment, said amount being for the $15,000 insurance, $2,500 allowed as reasonable attorney fees, $1,800 being the 12 per cent. statutory damages, and $1,837.50 as interest on the amount of the insurance up to the date of the judgment. The court further adjudged that appellee take nothing against Lee Glasscock. The court further rendered judgment in favor of appellant and against Lee Glasscock for $48.12, with interest thereon from June 7, 1918.

The court submitted only the following two issues:

"Question No. 1. Do you believe from the preponderance of the evidence that Pat Dolan was in the exercise of ordinary care, led to believe, and did believe, from the acts and conduct of the defendant company, if any, and those of its agent, Lee Glasscock, if any, made and done within the scope of his authority, as shown by the written contract between said Glasscock and said defendant company, that defendant company has accepted his (Dolan's), application for insurance and that he was insured in accordance therewith? If you should answer Yes to question No. 1, then answer this question:

"Question No. 2: Do you believe from the preponderance of the evidence that the defendant company knew, or had good reason to believe, that Pat Dolan believed the company had accepted his application for insurance in accordance therewith?"

The jury answered, "Yes," to both questions.

The insurance company appeals. Appellant presents 28 assignments of error.

The first assignment complains of the refusal of the court to give its requested charge directing a verdict in its favor. Appellant presents four propositions under this assignment. The first is that no contract of insurance resulted, even though no notice of rejection of the application was given the applicant, or the premium returned until after his death. The second proposition is to the effect that no duty rested upon the company to accept or reject the application, and its failure to notify the applicant of the rejection or its silence with reference to the application does not estop the company from denying the acceptance. The third proposition is that the suit is based upon an alleged verbal agreement to insure, of which there was no evidence and allegation of any fact constituting estoppel, and the proof did not correspond to the, pleadings. The fourth proposition is that under the laws of this state there can be no verbal contract of insurance, and that, before there can be insurance, a written policy must be issued.

The issue joined in the pleadings as to the acceptance as a fact by the company of Dolan's application was not submitted to the jury. Both parties pleaded that a policy was not issued. The only issue submitted seems to be on the issue of estoppel; that is, that by reason of the facts pleaded and shown by the evidence the company is estopped from denying acceptance of the application. The court in submitting the two issues instructed the jury as follows:

"You are instructed that any statements by the defendant, Lee Glasscock, to the applicant, Hays Pat Dolan, variant from and differing

from and not in accordance with the written application for insurance signed by said Dolan, and not in compliance with the book of instructions and written contract made at the time of the application for insurance by said Dolan or at the time he stood his medical examination, are not evidence against the defendant Great Southern Life Insurance Company, and are not to be considered for any purpose against said defendant, Great Southern Life Insurance Company."

The facts, submitted briefly, are: Was Dolan led to believe, and did he believe, that the company had accepted his application for insurance; and did the company know, or have good reason to believe, that Dolan believed the company had accepted his application, and that he was by such acceptance insured? The question is presented: Do the facts, as presented and as found by the jury, create an acceptance by estoppel?

[1] The mere application for insurance is not a contract of insurance. When made out and forwarded it has then attained only to the degree and dignity of a proposition on the part of the applicant, and before it can become a contract for insurance it must be accepted like any other contract. When the application is accepted by the company the contract for insurance is then complete, without the issuance of the policy, unless the application provides otherwise, which is not the case here, the policy not being the contract, but only the statement of the contract.

We are referred by appellant to Modern Woodmen of America v. Owens, 60 Tex. Civ. App. 398, 130 S. W. 858; Life Insurance Co. v. Rudolph, 45 Tex. 457; Patton v. Rucker, 29 Tex. 408; Merchants' & Bankers' Fire Underwriters v. Parker (Tex. Civ. App.) 190 S. W. 525; and National Union Fire Ins. Co. v. Patrick (Tex. Civ. App.) 198 S. W. 1050. Space forbids an extended review of each of these cases.

The first case cited presents a discussion of express warranties. As said by the court, it is well settled that an express warranty must be literally complied with, without reference to the knowledge or ignorance, good faith, or bad faith, of the party making the same. In that case it was expressly stipulated that the benefit certificate should not take effect until delivered. The case does not present the issue of acceptance by estoppel.

The case of Life Ins. Co. v. Rudolph, as we construe it, was based upon the construction the court put upon a portion of the receipt issued by the agents of the company to the applicant, Richards. The construction placed upon the pleading of Rudolph was that the contract of insurance had been completed by an acceptance in fact on the part of the company of the application. The court construed the terms of the receipt given by the agents to the applicant that no insurance was attempted to be created until the application was accepted. The court said:

239 S.W.—16

"We are unable to find in the evidence, the substance of which it has been attempted to state, any sufficient foundation for the conclusion that as a matter of fact the application of Richards was accepted."

In that case the application was returned for correction of applicant's name, the court construing that fact and the memorandum made by the company asking an explanation as strongly indicating that the application had not then been accepted. The application was returned without correction. The receipt of the premium and the application for insurance was on the 11th of November, 1870; the application was received by the company on November 22d, and returned for correction on the 28th of November. Richards was wounded in a personal rencounter on the 23d day of November and died within a few days. The court further said that:

"Where it is evident that the company postpones definite action for the purpose of explanation, we are aware of no rule of law which would make such action tantamount to acceptance. Under the circumstances it does not appear that the failure of the company to direct a return of the premium at the time the application was returned could have misled the applicant, had he been still alive."

The court, in that case further said that it does not appear that the company have retained, or are now retaining, the premium under such circumstances as to estop them from denying the acceptance of the application. We think the case, from its issues and facts, and the court's observations on the facts, presents more a discussion of what constitutes an acceptance in fact. The question of acceptance by estoppel was not pleaded nor discussed. The same might be said of the case of Patton v. Rucker, where the question was an acceptance in fact to sell real estate.

In Merchants' & Bankers' Fire Underwriters Co. v. Parker, estoppel was not pleaded. The jury found that the company did not act on the application and accept and approve it. The application provided that—

"The association shall not be bound by any act done, or statement or agreement made, or promise, or knowledge of any solicitor, * * * and no liability of the association shall attach until this application has been actually approved at the home office of the association."

The only point we see in this case that seems to have application is the observation made by the court that in some cases it has been held that where an application has been made and forwarded and retained by the company an unreasonable length of time, without action, and the applicant has relied on his protection to his loss, the company is liable, referring to a number of cases, but holding that the cases so holding were in conflict with the trend of authority throughout this country, and referred to Life Ins. Co. v. Rudolph, supra. The case, however,

was decided on the provision in the application above stated.

[2] It seems to be well settled that a contract of insurance may be by parol in the absence of statutory requirement or other positive regulation to the contrary. We find nothing in our statute inhibiting a contract for insurance by parol. Manhattan Life Ins. Co. v. Stubbs (Tex. Com. App.) 234 S. W. 1099; Ginners' Mutual U. Ass'n v. Fisher (Tex. Civ. App.) 222 S. W. 285; State Mutual Fire Ins. Co. v. Taylor (Tex. Civ. App.) 157 S. W. 950; Austin Fire Ins. Co. v. Brown (Tex. Civ. App.) 160 S. W. 973.

Our Supreme Court in Cohen v. Insurance Co., 67 Tex. 325, 3 S. W. 296, 60 Am. Rep. 24, held that a contract of insurance may be by parol. The court further held that where a policy of insurance had been forfeited for nonpayment of the premium then due, an acceptance of the premium restores responsibility for a loss; the insurance and the premium being obligations mutually depending upon each other. See, also, Fidelity & Casualty Co. v. Ballard & Ballard, 105 Ky. 253, 48 S. W. 1074.

[3] It seems to us that when the applicant has paid the premium to the agent of the company, authorized to demand and receive it, and the company had received from the agent its part of the premium in advance of any disposition made of the application, and had assumed the duty of returning the premium on a rejection of the application; and, where Dolan had been assured by the agent on receiving the premium that the premium would be returned in case of a rejection of the application, only 10 days being required for action, and where the applicant had passed a satisfactory examination and had done everything required of him, and had no notice of an adverse action on his application or cause for it, he could well assume and believe after several months that the company had taken favorable action.

[4, 5] The company is charged with knowledge of the fact that its agent had not returned the premium to Dolan. The company also knew that it had not otherwise notified Dolan of its action on his application. Dolan was evidently led to believe, and did believe up to the time of his death, that the company had accepted his application. There is no direct evidence that the company knew or believed that Dolan believed his application had been accepted, but the facts stated, we think, were sufficient to take the issue to the jury.

We think the findings of the jury are sustained by evidence. We have found no case in this state which we consider an adjudication of the question presented, viz.: Do the undisputed facts and the facts found by the jury show a contract by estoppel? The question is a most difficult one, and the holdings in other jurisdictions are not uniform. In a number of cases in other jurisdictions it has been held that the retention of the premium and failure to reject within a reasonable time may imply an acceptance. Joyce on the Law of Insurance (2d Ed.) vol. 1, p. 240, and cases cited. See, also, Merchants' & Bankers' Fire Underwriters v. Parker (Tex. Civ. App.) 190 S. W. 525, and the cases there referred to. While the court in Fire Ins. Co. v. Parker, supra, case expressed the opinion that the holding in that class of cases is in conflict with the trend of authority throughout this country, it seems to us that the question involved in that case referred to was not before that court, as estoppel had not been pleaded, and there was an express stipulation that no liability should attach until approved at the home office. It has also been held (same reference as above) that if the company agrees to notify the applicant of rejection of his application and receives the application and premium, but fails to give such notice for seven months, and the property is burned in the meantime, such delay renders the company liable. Such, however, would not be the rule where the application or other express stipulation provides that no liability shall attach until approved by the company. Modern Woodmen of America v. Owens, 60 Tex. Civ. App. 398, 130 S. W. 858.

[6] We understand the law to be that silence has the effect to estop a party where, under the circumstances, it is his duty to speak, and where that silence had the effect to mislead the other party to his injury. Bigelow on Estoppel, pp. 564, 575; Insurance Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671, 36 L. Ed. 496; More v. Insurance Co., 130 N. Y. 545, 29 N. E. 757; Insurance Co. v. Griffin, 59 Tex. 513; East Texas Fire Ins. Co. v. Perkey, 89 Tex. 604, 35 S. W. 1050.

[7] We are of the opinion that under the above facts and findings of the jury, the court was not in error in refusing to give the requested instruction, and that the pleadings are sufficient to justify the submission of the issues submitted.

[8, 9] The court was not in error in not sustaining appellant's plea of misjoinder, as claimed under the second assignment. All of the matters grow out of one and the same transaction. The rule forbidding misjoinder is a rule of convenience and expediency, and should be construed with the broader rule for avoidance of multiplicity of suits. Paul v. Sweeney (Tex. Civ. App.) 188 S. W. 525; Rowland v. Klepper (Tex. Civ. App.) 189 S. W. 1033; San Angelo Cotton Oil Co. v. Houston County Oil M. & Mfg. Co. (Tex. Civ. App.) 185 S. W. 887; Garner v. Jamison (Tex. Civ. App.) 162 S. W. 941; Adams v. First National Bank (Tex. Civ. App.) 178 S. W. 993.

[10] Appellant assigns error in entering judgment for attorney fees and statutory penalty on the ground that no policy of insurance was issued. We have concluded that such liability is imposed by the statute for

refusal to pay a valid claim, although no written policy was issued and delivered. Manhattan Life Ins. Co. v. Stubbs (Tex. Com. App.) 234 S. W. 1099.

Error is assigned to the refusal of the court to instruct the jury to answer "No" to both questions submitted. The grounds assigned are that, no policy having been issued, the court was without power to render judgment for statutory damages, and that there is no evidence to support the court's charge submitting the second issue. The evidence is contained in about 114 pages of the record, too voluminous to reproduce here. We have made a very careful review of the evidence, and have stated what facts the evidence seems to us to establish. There is but little controversy in the evidence as to any facts. We think the evidence establishes the facts found, and supports the facts submitted to and found by the jury.

[11] Appellant complains of the portion of the court's charge reading as follows:

"From the acts and conduct of the defendant company, if any, and those of Lee Glasscock, if any, made and done within the scope of his authority"

—claiming that Glasscock had no express or implied authority to act for the company after he had received the application and remitted the premium. We have stated above the portions of the court's charge in addition to the above extract from the charge. We have also stated the contract between the company and Glasscock. Glasscock was authorized to collect the premium, and we think had the authority to say to Dolan that the premium would be returned to him in the event the application was not accepted. We think the court's charge limited and carefully protected all of the rights of the company.

[12] It is insisted that the submission of question No. 1 and the matters therein contained are not based upon the pleadings. Question No. 1, is based upon the theory of equitable estoppel. We have briefly stated the pleadings, and, to conserve space will not restate the facts pleaded, but are of the opinion that the pleadings fully and comprehensively state the acts and omissions relied on as constituting such estoppel.

[13] Error is assigned to the submission of question No. 2, in that the answer thereto is predicated upon the jury's answering question No. 1 in the affirmative. There was no reversible error in the manner of presenting the issue. Had the jury found the first issue in the negative, there would have been no necessity for an answer to the second. The affirmative findings on both issues seem to destroy the point sought to be made.

We have stated our views in discussing the first assignment on the question of the sufficiency of the evidence to justify the submission of the two questions.

By assignments 11 and 12 complaint is made to the admission in evidence of witness Schrock of a conversation between Glasscock and Dolan relative to Dolan's taking out a policy of insurance with appellant. The conversation as stated by the witness was as follows:

"Mr. Glasscock asked Mr. Dolan if he was ready to take the insurance, if he was ready to give him a check for the insurance, and Mr. Dolan said he did not have the money right then, and Mr. Dolan further told him that he expected to take the insurance, that he wanted to take it, but that he did not have the money right then, and he said something to him about getting the policy for him and he would pay him for the policy when he got it, and Mr. Glasscock told him no, to give his check then, and told him further that his insurance would be in effect from the day he gave him a check, and told him he had better give him a check then. Mr. Dolan said, 'Well, I will have to try to get the money, then,' and they went away to get the money. * * * The health certificate, the examination was spoken of, and Mr. Glasscock mentioned the fact that it had been but a short time since he had the other examination, and he was satisfied that the health certificate would be all right. The amount that was to be taken was $15,000. Mr. Dolan said he did not have the money to pay the premium, and would have to borrow the money to pay it. * * * Glasscock said to him, about paying the premium that day, that the insurance would be in effect from the time he gave him the check; that that was the advantage he would have in paying it that day. * * * He told him if he should die that night that the policy would be that the insurance would be in effect, and that his family would get the benefit of the money. Then after they concluded the conversation they both walked off towards the Sierra Blanca State Bank."

On cross-examination appellant elicited from the witness substantially the same as above. All of the statements were competent evidence against Glasscock.

[14] We think the court's charge in the portions quoted above were sufficient to exclude the objectionable portion of the conversation as to the company. Much of the conversation detailed by Schrock was admissible against appellant. Glasscock was authorized to collect the premium in advance of the acceptance of the application, and most of the conversation amounted only to an insistence by Glasscock that the payment of the premium be then made, with the statement that the premium would be returned to Dolan if the application was not accepted. That promise, we think he could make, as he was authorized to collect it.

[15] We think there is no reversible error in permitting the witness Silliman to testify that Glasscock was "writing life insurance for the Wichita Life Insurance Company at first" and later for appellant, as appellant had taken over all of the assets and assumed the liabilities of the Wichita Life,

and continued Glasscock as its agent. Glasscock's agency for the two companies was not denied, and the evidence tended only to establish the fact that Glasscock acted as agent for the two companies in soliciting insurance, and in the consolidation of the Wichita Life with appellant. Glasscock had arranged through the bank, of which Silliman was cashier, to take care of his drafts with the stock attached, in buying up stock of the Wichita Life. We can see no prejudice to appellant from the evidence, admitting that portions of the evidence might be immaterial.

[16] Nor can we see any prejudice to appellant in permitting to be introduced as evidence certain telegrams from E. P. Greenwood, vice president of appellant to the bank, stating the giving of the drafts by Glasscock and guaranteeing against loss.

[17] There was no error in permitting Drs. Fuller and Church, appellant's medical examiners for Dolan, each to state that he unqualifiedly recommended the risk. The doctors had so stated in answer to the same question in Dolan's application. The question was then asked: "Was that true?" and the witness answered: "Yes, sir." The doctors were each further permitted to state that he considered his (Dolan's) condition normal, and regarded Dolan as a good insurance risk. We can see no good reason why the doctors should not be permitted to verify the report each had made to the company, and to say that the report was a true report, as tending to show, with other facts, that Dolan was led to believe that his application had been accepted.

Appellant presents other assignments complaining of the overruling of general demurrers, and special exceptions to the appellee's supplemental petition. We have carefully considered each assignment, and believe they present no reversible error.

Believing, as we do, that under the findings of the jury, construed in the light of the evidence, the company is now estopped from denying an acceptance of the application for insurance, and finding no reversible error committed upon the trial, the case is affirmed.

### On Motion for Rehearing and to Correct Findings of Fact.

Under the first four assignments in the motion for rehearing appellant complains that the opinion is based on matters excluded from the jury by the trial court. There are some statements in the findings of fact which should not have been included, and we now exclude them. They are as follows:

"Glasscock mentioned to Dolan the health certificate and examination in the Wichita Southern Life Insurance Company and expressed himself to Dolan as being satisfied that his health certificate would be all right."

We exclude the above on the ground that it seems to have been excluded from the jury by the court's charge, and received only as against Glasscock. We also, for the same reason, exclude from our findings of fact the following:

"Glasscock said to Dolan that he would be insured from the time he paid the money [premium] from the date of the application. * * * That he was insured from the date of that payment of the first premium until the company either accepted or rejected the application."

The above had application only as against Glasscock, but not as against appellant.

We exclude also from our findings of fact the following statement:

"He [meaning Glasscock] further said to Dolan that if the company turned down his application the premium would be returned."

We also withdraw from the opinion the expression:

"Where Dolan had been assured by the agent on receiving the premium that the premium would be returned in case of a rejection of the application."

We were also in error in stating that on cross-examination of the witness Schrock appellant elicited from the witness (Schrock) substantially the same as above. Appellant did not cross-examine the witness Schrock.

The motion for rehearing is sustained to the extent of making the above corrections in the findings of fact, and the observations of this court as above, and is overruled as to all other matters.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 10, 1922.